IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DR. LAURA J. HATCHER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 3:13-CV-00407-NJR-SCW |
| | ) |
| RITA CHENG, BOARD OF TRUSTEES | ) |
| OF SOUTHERN ILLINOIS | ) |
| UNIVERSITY, DR. KIMBERLY | ) |
| KEMPF-LEONARD, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on Defendants' Joint Motion to Dismiss for Failure to State a Claim filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Doc. 39). A hearing on the motion was held on July 28, 2014, and the motion was taken under advisement. For the following reasons, the motion to dismiss is granted, in part, and denied, in part.

**A. Facts**

Plaintiff Dr. Laura Hatcher was employed with Southern Illinois University ("SIU") as an Assistant Professor in the Department of Political Science ("Department"), in the College of Liberal Arts ("CLA") from the fall of 2006 until the summer of 2013. From 2006-2012, Hatcher was a "tenure-track" professor, meaning she would ultimately be considered for tenure at a future date. That process began in October 2011. If

approved by SIU, Hatcher would have been tenured beginning in the fall of 2012. If denied, Hatcher's tenure-track professorship would be converted to a term position beginning in the fall of 2012 and ending in May 2013.

Hatcher initially received positive results in the tenure approval process. She received a majority of positive votes for tenure from the faculty in her Department. The Chair of the Department recommended her for tenure. The tenure committee of the CLA voted in her favor.

In November of 2011,[1] however, Hatcher's tenure approval process went awry after a discussion with the Dean of the CLA, Defendant Dr. Kimberly Kempf-Leonard. Hatcher raised concerns, which were relayed to her by female students in the Department, to Kempf-Leonard concerning non-remedied sexual harassment of female students. Hatcher believed the problems were due to the ineffectiveness of SIU's current sexual harassment policy. The female students had confided in Hatcher because she was the senior female faculty in the Department. Kempf-Leonard acknowledged Hatcher's concerns but failed to address them. Just two weeks later, Kempf-Leonard ignored the previous favorable results of Hatcher's tenure approval process and denied her application. Instead, Kempf-Leonard recommended tenure for an allegedly inferiorly-qualified male assistant professor in Hatcher's Department, who received

---

[1] The allegations in the Count 4 of the complaint state that the series of events concerning Hatcher and Kempf-Leonard occurred in November of 2012. *See* Doc. 22 p. 8-9. This appears to be a typographical error because other parts of the complaint clearly indicate that the application approval process was occurring in October-November of 2011, and Hatcher had already been denied tenure by November of 2012.

fewer positive departmental votes in favor of tenure than Hatcher.

On March 1, 2012, Dr. John Nicklow ("Nicklow"), SIU Provost, sent a letter to Hatcher officially denying her application for tenure. Hatcher's professorship was accordingly converted to a one-year term for the 2012-13 academic year. Hatcher responded by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 3, 2012. Subsequently, Hatcher appealed the denial of her tenure to the SIU Judicial Review Board ("JRB"), and a hearing was held. Nicklow testified at the hearing and told the JRB that Hatcher had filed an EEOC charge of discrimination. On October 18, 2012, the JRB unanimously decided that Hatcher should receive tenure and overturned Nicklow's decision. The JRB panel's decision made reference to the testimony of Hatcher's colleague, who indicated that Hatcher was subjected to a hostile work environment as a result of her report of sexual harassment against a male faculty member. Hatcher was a mandated reporter under the terms of SIU's sexual harassment policy.

The JRB panel's ruling was forwarded to the SIU Chancellor, Defendant Rita Cheng, on October 29, 2012. Cheng overturned the JRB panel's finding on November 27, 2012. Hatcher's employment with SIU terminated in May of 2013.

**B. Procedural History**

On April 26, 2013, Dr. Hatcher filed a civil rights complaint pursuant to 42 U.S.C. §§ 1983, 1988, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging various violations of rights guaranteed under federal law (Doc. 2). An amended

complaint was filed on November 26, 2013 (Doc. 22) containing the following Counts:

> **Count 1:** Employment discrimination (sex) in violation of Title VII of the Civil Rights Act of 1964 against Board of Trustees of Southern Illinois University;
>
> **Count 2:** Retaliation for activity protected by Title VII of the Civil Rights Act of 1964 against Board of Trustees of Southern Illinois University;
>
> **Count 3:** Denial of due process rights guaranteed under the 14th Amendment to the U.S. Constitution against Rita Cheng, individually;
>
> **Count 4:** Retaliation for activity protected by the First Amendment to the U.S. Constitution against Dr. Kimberly Kempf-Leonard, individually.

(*id*.). The instant motion to dismiss was filed on December 23, 2013, as to all Counts (Doc. 39). In May 2014, the case was reassigned to the undersigned District Judge from the docket of Chief Judge David R. Herndon.

### C. Applicable Standard

A party may assert by motion the defense of failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests…'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). While detailed factual allegations are not required, a civil complaint must consist of more than just "labels and conclusions, and a formulaic recitation of the elements of a cause of action…" *Id*.

In deciding a Rule 12(b)(96) motion to dismiss for failure to state a claim, a court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts alleged, and draw all possible inferences in her favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). "To survive a Rule 12(b)(6) motion to dismiss, a complaint must 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557.).

### D. Count 1

Defendant SIU Board of Trustees ("SIU") asserts that Count 1 must be dismissed because Hatcher does not allege any factual circumstances that raise a meaningful inference of gender discrimination. Specifically, SIU points to paragraph 45 of the amended complaint as an example of "bald, conclusory, unsupported assertion" that United States Supreme Court has found to be insufficient (Doc. 40 p. 19). Paragraph 45 of the amended complaint states as follows:

> 45. Cheng's asserted reasons for overturning the JRB panel's decision to grant Hatcher promotion with tenure were a pretext in an attempt to create a defense for Defendant to Hatcher's underlying charge of sex discrimination.

(Doc. 22 p. 6). Hatcher responds by arguing that the full complaint, when all allegations are read in context, adequately states a claim for sex discrimination under Title VII of the Civil Rights Act of 1964. The Court agrees with Hatcher.

The Seventh Circuit Court of Appeals has recently reaffirmed its prior holdings concerning the pleading requirements concerning Title VII claims of sex discrimination. Specifically, the Seventh Circuit stated in a July 10, 2014 decision, *Carlson v. CSX Transp., Inc.*, the following:

> A complaint alleging sex discrimination under Title VII "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." [*Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)]; *see also EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 781–82 (7th Cir. 2007) (stressing the simplicity of pleading a Title VII discrimination claim). The plaintiff is not required to include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination under the "indirect" method of proof. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *see also Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (observing that *Swierkiewicz* survived *Twombly* and *Iqbal*); [*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)] (same). While fraud claims, for example, must be pled with particularity, *see* FED.R.CIV.P. 9(b), Title VII claims are not subject to a heightened pleading standard. *Swierkiewicz*, 534 U.S. at 513–15. Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims. *Concentra*, 496 F.3d at 782.

No. 13-1944, 2014 WL 3361072 (7th Cir. July 10, 2014). With respect to Count 1, the amended complaint adequately avers that SIU instituted a specified adverse employment action against Hatcher on the basis of her sex. Hatcher alleges that she was not granted tenure (and terminated as a result) because SIU had a policy within the

Department of Political Science to only promote male tenure-track professors to tenure status. Accordingly, SIU has adequate notice of the claim, and Count 1 shall proceed.

### E. Count 2

Next, SIU argues that Count 2 (retaliation) must be dismissed because the allegations in Count 2 consist of only three conclusory paragraphs with no allegations containing a plausible claim for retaliation under Title VII (Doc. 40 p. 19). SIU suggests that a statement of alleged protected activity, alleged retaliatory action, and a factual basis for claiming that the standards of a retaliation claim under Title VII are missing from the amended complaint (*id.*). Hatcher's amended complaint alleges as follows:

> 49. By the conduct described above, Defendant intentionally retaliated against Plaintiff for engaging in protected activity under Title VII of the Civil Rights Act of 1964.

(Doc. 22 p. 7). Hatcher argues that her additional allegations that that "she engaged in a protected activity by having a discussion with Defendant Kempf-Leonard regarding 'problems for female students in her Department who were subjected to sexual harassment without remedy'" (Doc. 22, ¶ 58) are sufficient to state a Title VII retaliation claim (Doc. 63 p. 2).[2] With respect to Count 2, the Court agrees with SIU.

"Pleading a retaliation claim under Title VII requires the plaintiff to 'allege that she engaged in statutorily protected activity and was subjected to an adverse employment action as a result.'" *Carlson*, 2014 WL 3361072 at *6 (quoting *Luevano*, 722 F.3d at 1029). "The protected activity must be specifically identified." *Id*. (citing

---

[2] As the Court makes clear in Part G, the Court disagrees that the exchange between Hatcher and Kempf-Leonard was protected speech.

*Concentra*, 496 F.3d at 781). Here, Count 2 of the amended complaint is flawed in that it does not specifically identify the protected activity. As a result, SIU does not have fair notice of the grounds upon which the retaliation claim (Count 2) rests.

Count 2 of the Amended Complaint (Doc. 22) is **DISMISSED with prejudice**.

### F. Count 3

Proceeding to Count 3 (due process), Cheng advocates dismissal because Hatcher has failed to allege a plausible claim that she had a constitutionally protected property interest in continued employment. The Seventh Circuit has stated the following as to constitutionally protected property interests and employment arrangements:

> In order to make his due process claim, Covell must first demonstrate that he had a constitutionally protected property interest. *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009) (citing *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996)); *Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007). A person's interest in a benefit, such as continued employment, constitutes "property" for due process purposes only if "there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." *Border*, 75 F.3d at 273. A protected property interest in employment can arise from a statute, regulation, municipal ordinance, or an express or implied contract, such as "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Border*, 75 F.3d at 273 (citations omitted).

*Covell v. Menkis*, 595 F.3d 673, 675-76 (7th Cir. 2010).

Hatcher's amended complaint alleges the following concerning her employment situation with SIU:

> 12. Hatcher was hired in July 2006 by SIU, as a tenure track Assistant Professor in the Department of Political Science ("Department"), in the College of Liberal Arts ("COLA").
> 13. Hatcher began her teaching assignments with Fall Semester 2006.
> 14. As a tenure track Assistant Professor, Hatcher began her tenure review

> process in October 2011.
> 15. If granted tenure, Hatcher would have been tenured beginning with Fall Semester 2012.
> 16. If denied tenure, Hatcher's final year of employment at SIU would end in May 2013.
> 33. Because Hatcher was denied tenure, she was placed on a term appointment for the 2012-2013 school year and her employment with SIU will end in May 2013.

(Doc. 22). There are no allegations in the amended complaint that Hatcher had an expectation of continued employment. Even if such allegations were present, Hatcher's expectation could not have lasted much longer than the time during which she was considered for tenure. The employment arrangement identified in the amended complaint clearly states that if Hatcher were to be denied tenure, her employment would be converted to a one-year term that would end in May 2013. Thus, the entirety of Hatcher's employment with SIU was essentially a time-fixed, contractual position (*i.e.* term) with a possibility of employment past May 2013 if her application for tenure were granted. Accordingly, the expectation of continued employment is contingent upon a favorable outcome of the tenure application process.

Count 3 alleges that Cheng essentially denied Hatcher a fair and unbiased tenure application process (Doc. 22 p. 8 ¶ 54). The Seventh Circuit has held that there is no deprivation of a constitutionally protected property interest when a contractual breach at issue is an entitlement to some extra consideration that will result in a job offer only if some other, highly uncertain condition is satisfied. *See Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 417 (7th Cir. 1988) (although a school employer breached affirmative action

provision of employment contract with employee, employer's failure to appoint the employee to the position did not deprive applicant of due process property interest).

Additionally, the Seventh Circuit has repeatedly held that non-tenured faculty members like Hatcher lack a constitutionally protected property interest that would afford a right to due process. *See Trejo v. Shoben*, 319 F.3d 878, 889 (7th Cir. 2003) (collecting cases). *See also Upadhya v. Langenberg*, 834 F.2d 661, 662-63 (7th Cir. 1987) (same). The Court acknowledges that the *Trejo* line of precedent involved educators within the University of Illinois system, and Hatcher has attempted to distinguish these cases by arguing that the SIU system involves a somewhat different process. As explained above, however, the SIU system, as alleged in the amended complaint, does not confer a right of continued employment. In fact, the two systems actually appear to be quite similar. *See id*. at 662 (describing the University of Illinois system as a five-year process to demonstrate professional skills, ultimately leading to a decision concerning tenure).

*Trejo* also explained that one of the real property interests at stake in the due process/employment context is the employee's right to pursue his or her chosen occupation. *See id*. An "employee's right to pursue his or her chosen occupation is infringed only if the circumstances of the discharge, at least if they were publicly stated, had the effect of blacklisting the employee from employment in comparable jobs." *Id.* (quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001) (quoting *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987)) (internal quotation marks omitted). Like *Trejo*, there is

no allegation in this case that Hatcher has been effectively blacklisted from pursuing her academic career.

Furthermore, Cheng is entitled to qualified immunity because Hatcher has not alleged that Cheng has violated a clearly established right. "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, ---- U.S. ----, 134 S. Ct. 2056, 2066-67, 188 L. Ed. 2d 1039 (2014) (quoting *Ashcroft v. al–Kidd*, 563 U.S. ----, ----, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)). There is no allegation in the amended complaint that Hatcher had a clearly established right at the time Cheng made the final decision denying her tenure application. When questioned on the issue at oral argument, Hatcher essentially admitted that she could not come forward with an analogous case establishing a right to be free from the specific conduct at issue. *See Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001) (providing that qualified immunity is "dissolved" if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights). Considering the discussion of the well-settled Seventh Circuit precedent above, the Court does not believe Hatcher could come forward with such a case.

Count 3 of the Amended Complaint (Doc. 22) is **DISMISSED with prejudice**.

### G. Count 4

Finally, Kempf-Leonard argues for dismissal of Count 4 because Hatcher has failed to allege a plausible claim that she engaged in speech protected by the First Amendment. For support, Kempf-Leonard relies primarily on the United States Supreme Court's decision in *Garcetti v. Ceballos*, 547 U.S. 410 (2006). In *Garcetti*, the Supreme Court held that a deputy district attorney's speech was not protected by the First Amendment to the United States Constitution when, pursuant to his official duties as a calendar deputy, he wrote a disposition memorandum recommending dismissal of a pending criminal case on the basis of purported governmental misconduct. *See id.* at 421-22. The plaintiff later suffered adverse employment action as a result of the speech. *See id.* The Supreme Court reasoned that when the plaintiff went to work and performed the tasks he was paid to perform, he acted as a government employee, not as a citizen, and it was essential that his public employer had the ability to exercise control over the public employee. *See id. Garcetti* ultimately stands for the principle that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 421. The Seventh Circuit has followed this principle by affirming the dismissal of First Amendment claims under Rule 12(b)(6). *See, e.g., Abcarian v. McDonald*, 617 F.3d 931, 937 (7th Cir. 2010); *Tamayo*, 526 F.3d at 1092.

Count 4 alleges that Hatcher was subjected to an adverse employment action after

she raised concerns with Kempf-Leonard about sexual harassment of female students and sex harassment policies at work. In response to Kempf-Leonard's argument, Hatcher contends that she was speaking as a citizen. "When determining whether a plaintiff spoke as an employee or as a citizen, we take a practical view of the facts alleged in the complaint, looking to the employee's level of responsibility and the context in which the statements were made." *Abcarian*, 617 F.3d at 937 (citing *Tamayo*, 526 F.3d at 1092).

The allegations in the amended complaint concerning the sexual harassment are as follows:

> 41. In the JRB panel's decision, reference was made to testimony by a male colleague in Hatcher's department that Hatcher was subjected to a hostile work environment because she made a report of sexual harassment against a male faculty member as she was mandated to do under SIU's sexual harassment policy.
> 58. On or about November 3, [2011], Hatcher had a discussion with Kempf-Leonard, her Dean, regarding the problems for female students in her Department who were subjected to sexual harassment without remedy because of problems with SIU's current sexual harassment policy.
> 59. Hatcher told Kempf-Leonard that female students subjected to sexual harassment came to her because she (Hatcher) was the senior female faculty in the Department.
> 62. Because of the concerns regarding sexual harassment issues within the Department that Hatcher raised with Kempf-Leonard, Kempf-Leonard denied Hatcher's application for tenure less than two (2) weeks later in a letter dated November 16, [2011].
> 64. Kempf-Leonard's action in denying tenure to Hatcher was in retaliation for Hatcher speaking on matters of public concern in violation of her First Amendment rights.

(Doc. 22). As a glaring starting point, paragraph 41 plainly states that Hatcher was mandated to report sexual harassment as part of her employment with SIU. Hatcher

argues in her response that she was mistaken in her belief that she was mandated to report sexual harassment. But this argument actually proves Kempf-Leonard's point that the speech occurred within the context of Hatcher's employment. At the time the statements were made, Hatcher believed she was speaking as an employee, not a citizen. Further, the allegations state that the female students came to Hatcher because she was "the senior female faculty in the Department"(*id.* ¶ 59), and the reason that Hatcher raised the concerns was to address "problems with SIU's current sexual harassment policy" (*id.* ¶ 58). Thus, considering Hatcher's level of responsibility and the context in which the statements were made, it is apparent that Hatcher was speaking as a public employee rather than a citizen.

Similar to Count 3, the Court also concludes that Kempf-Leonard is entitled to qualified immunity because Hatcher has not alleged that Cheng violated a clearly established right and has not come forward with a clearly analogous case establishing a right to be free from the specific conduct at issue.

Count 4 of the Amended Complaint (Doc. 22) is **DISMISSED with prejudice**.

### H. Conclusion

For the forgoing reasons, the Motion to Dismiss for Failure to State a Claim (Doc. 39) is **GRANTED in part and DENIED in part.** Counts 2, 3, and 4 of the Amended Complaint (Doc. 22) are **DISMISSED with prejudice**.

The Clerk is **DIRECTED** to terminate Rita Cheng and Dr. Kimberly Kempf-Leonard as Defendants and to enter judgment accordingly at the conclusion of

this case.

This case shall proceed on Count 1 against Defendant Board of Trustees of Southern Illinois University. The dispositive motions deadline in this case is **RESET** to September 9, 2014.

**IT IS SO ORDERED.**

DATED:   August 7, 2014

*s/ Nancy J. Rosenstengel*
**NANCY J. ROSENSTENGEL**
**United States District Judge**
